IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT LAWHEAD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-04-1331-L |
| | ) |
| RON WARD and THE | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF OKLAHOMA, | ) |
| | ) |
| Respondents. | ) |

## **REPORT AND RECOMMENDATION**

Mr. Robert Lawhead seeks a writ of habeas corpus, challenging the execution of his sentence.[1] The Court should grant habeas relief based on an *ex post facto* violation.

## **Background**

Mr. Lawhead, an Oklahoma state inmate, escaped from a Texas detention center in April 1996. *See* Petition at p. 15. After recapture, the Petitioner was demoted to earned credit level ("Level") 1.[2] *See* Consolidated Record Card at p. 2.

---

[1] Mr. Lawhead filed his petition under 28 U.S.C. § 2254. Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody at p. 1 (Oct. 13, 2004) ("Petition"). But his challenge to the execution of his sentence should be considered under 28 U.S.C. § 2241. *See Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002) (construing a habeas petition to arise under 28 U.S.C. § 2241 because the petitioner "was challenging the execution of his sentence rather than the validity of his conviction").

[2] Under Oklahoma law, the number of earned credits an inmate may receive is determined by his placement in one of four security classification levels. *See* Okla. Stat. tit. 57 § 138 (2004 supp.).

By November 1998, the Petitioner had been promoted to Level 3. *See* Consolidated Record Card at p. 3; Petition at p. 15. However, when Mr. Lawhead sought promotion to Level 4, prison officials explained that he was ineligible for promotion past Level 2 based on his escape. *See* Consolidated Record Card at p. 3; Petition at p. 15. A month later, the Petitioner was demoted to Level 2, with revocation of all of his Level 3 earned credits. *See* Consolidated Record Card at p. 3; Petition at p. 15. These credits were eventually returned. *See* Consolidated Record Card at p. 5.

In the present action, Mr. Lawhead claims: (1) The use of expunged misconduct convictions to deny earned credits constituted a due process violation, and (2) an *ex post facto* violation took place through the application of an amended Department of Corrections ("DOC") policy. Petition at pp. 6, 8; *see also* Appellant's Brief in Support of Petition for Mandamus at pp. 6-11, *Lawhead v. Miller*, Case No. MA-2004-412 (Okla. Crim. App. Apr. 22, 2004) ("Mandamus Brief").[3]

### The Denial of Due Process Through the Use of Expunged Misconduct Convictions

After his escape, Mr. Lawhead was convicted of a disciplinary infraction in both Texas and Oklahoma. Response from Facility Head/District Supervisor or Designee, Appeal No. 96-127 (signed June 28, 1996); Administrative Action, Appeal No. 96-127 (signed Aug. 31, 1996); *see* Petition at p. 15. Eventually, both misconduct convictions were expunged.

---

[3]   Mr. Lawhead incorporated "all facts stated[] and arguments presented" in his state appellate brief. Petition at pp. 6, 8.

*See* Petition at p. 15. The Petitioner believes that his right to due process was violated by the use of the expunged convictions to deny promotion. *See supra* p. 2. Mr. Lawhead's argument is based on a misunderstanding of the basis for the DOC's action.

According to the DOC policy when Mr. Lawhead escaped, an escape could be considered for security classification purposes when the escape was documented on the "movement history" portion of the Consolidated Record Card. Inmate Reclassification, OP-060103 at p. 11 (eff. June 23, 1995).[4]

The Petitioner admits that he had escaped in April 1996,[5] and the escape is documented on the "movement history" portion of his Consolidated Record Card.[6] The record shows that the DOC had relied on the notation of an escape on the Consolidated Record Card rather than on the expunged misconduct convictions. Grievance Response from Reviewing Authority (Apr. 18, 2003).[7] Thus, the Court should reject Mr. Lawhead's

---

[4]   The 1995 version of the policy was not submitted by the parties. But this version of the policy is subject to judicial notice. *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of agency rules and regulations."); *accord Morrow v. Collins*, 111 F.3d 374, 375 (5th Cir. 1997) (*per curiam*) ("We take judicial notice of the recently established [Texas Department of Criminal Justice] procedures . . . .").

[5]   Petition at p. 15.

[6]   Consolidated Record Card at p. 1.

[7]   At the time of Mr. Thomas' escape, DOC policy specified that expungement of escape misconducts would not affect the corresponding reference in the "movement history" portion of the Consolidated Record Card. Inmate Sentence Administration, OP-060211 at p. 39 (eff. Jan. 16, 1995). The policy stated:

> When the disposition of a misconduct report has been ordered expunged by the facility head or Administrative Review Authority, the facility or district will delete any reference to the disposition which is posted on the front of the

allegation that officials had committed a due process violation through reliance on expunged misconduct convictions.[8]

## An *Ex Post Facto* Violation Through Application of an Amended Prison Policy

Mr. Lawhead also complains about a prison policy amendment which required application of escape points to his classification level.  Petition at p. 6; *see* Mandamus Brief at pp. 6-9.  According to Mr. Lawhead, reliance on this amendment violated the *ex post facto* clause because when he escaped, "[e]scape history points were not referred to at all concerning credit levels."  Mandamus Brief at p. 8.  Mr. Lawhead is correct, and application of the prison policy did increase his penalty.[9]  As a result, the Petitioner is entitled to habeas relief on this ground.

---

    "Consolidated Record Card" and remove the misconduct from the file.  This excludes the movement history regarding expunged escape misconducts, as this information is necessary to determine noncreditable time.

*Id.*; *see also supra* note 4 (discussing judicial notice of a different DOC policy).

[8]    Because prison officials did not rely on the expunged misconduct convictions, the Court need not decide if such reliance would have resulted in a deprivation of due process.

[9]    The Respondent asserts that Mr. Lawhead lacks a liberty interest in his classification. Response to Petition for a Writ of Habeas Corpus at pp. 3-5 (Dec. 15, 2004).  But the absence of a protected liberty interest is not fatal on an *ex post facto* claim.  *See Lee v. Governor of the State of New York*, 87 F.3d 55, 59 (2d Cir. 1996) ("As plaintiffs point out, even if they do not have a protected liberty interest they may still challenge the retroactive application of the new eligibility rules as a violation of the Ex Post Facto Clause." (citations omitted)); *Dominique v. Weld*, 73 F.3d 1156, 1162 n.9 (1st Cir. 1996) ("Plaintiff's ex post facto claim is not barred by our above ruling that he lacks a protected liberty interest.").

I.  The Amendment of the Prison Policy

When Mr. Lawhead escaped in April 1996, the DOC policy allowed for demotion in certain circumstances. The policy stated: "Any inmate with active misconduct security points will not be eligible for promotion to Class Levels 3 or 4 until the points expire. . . . If the level is reduced to 1 or 2, the inmate cannot be promoted to 3 or 4 until the points expire." Earned Credit Classes, OP-060213 at p. 6 (eff. Jan. 20, 1994).

In 1997, the DOC amended the policy to state:

> Any inmate with active custody assessment points in the Escape History or Disciplinary Hearing sections of the "Custody Assessment/Facility Assignment Form" . . . or in the Escape History, Number of Disciplinary Convictions, or Most Serious Disciplinary Conviction sections of the "Custody Assessment Scale" . . . will not be eligible for promotion to Class Levels 3 or 4 until the points expire. . . . If the level is reduced to 1 or 2, the inmate cannot be promoted to 3 or 4 until the points expire.

Addendum-04, Earned Credit Class, OP-060213 (eff. Apr. 9, 1997); Earned Credit Classes, OP-060213 at p. 6 (eff. May 1, 1998).

II. Application of the Amendment to Mr. Lawhead

Mr. Lawhead was demoted to Level 1 when he escaped. *See supra* p. 1. By November 1998, Mr. Lawhead had been promoted to Level 3. *See supra* p. 2.

In May 1999, Mr. Lawhead sought promotion to Level 4. *See* Petition at p. 15; *see also supra* p. 2. The request was denied, purportedly because of Mr. Lawhead's "escape" points. *See* Petition at p. 15; *see also supra* p. 2. Approximately a month later, the Petitioner suffered a demotion to Level 2 and deduction of 77 earned credits. *See* Consolidated Record

Card at p. 4; *see also supra* p. 2. The notations reflect the demotion and deduction because Mr. Lawhead could not "go to L3 due to escape." Consolidated Record Card at p. 4.

In May 2001, Mr. Lawhead was again promoted to Level 3, where he remained for approximately three months. *See id.* Then, the Petitioner suffered demotion to Level 2 and deduction of 33 earned credits. *See id.* Again, the notations state: "I/M not eligible [sic] for Level 3 due to escape." *Id.* In 2003, the Petitioner was reissued 110 earned credits "due to Smith v. Scott." *Id.* at p. 5.[10]

III.    *Ex Post Facto* Constraints

Unless the State's action "increase[d] the penalty by which a crime [was] punishable," a subsequent change in the law would not violate the *ex post facto* clause. *California Department of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995). Prison policies constitute "laws" for purposes of the *ex post facto* clause. *See Smith v. Scott*, 223 F.3d 1191, 1193-94 (10th Cir. 2000). Thus, the relevant question is whether the temporary loss of credits and long term change in Mr. Lawhead's security classification increased his punishment. This Court should answer in the affirmative.

The Tenth Circuit Court of Appeals addressed similar facts in *Smith v. Scott*, 223 F.3d 1191 (10th Cir. 2000). There a DOC inmate attempted to escape in 1992. *See Smith v. Scott*, 223 F.3d at 1193. Authorities immediately demoted the prisoner to Level 1, but he gained promotion to Level 4 by 1993. *See id.* The inmate remained at this level until 1999, when

---

[10]    The notation states: "77 ec's returned from 11/98-5/99 & 33 ec's returned from 5/01-7/01 due to Smith v. Scott." Consolidated Record Card at p. 5.

officials announced that he had been improperly promoted. *See id.* Authorities accordingly demoted the inmate to Level 2 and deducted 1267 credits, relying on the 1997 amendment to find that the "escape" points would not expire for at least ten years. *See id.*

The Tenth Circuit Court of Appeals held that retroactive application of the 1997 policy to deduct earned credits constituted an *ex post facto* violation. *Id.* at 1196. First, the court noted that the 1997 policy applied to an event occurring before its enactment, the 1992 attempted escape. *Id.* at 1194. Second, the court found that "'the cancellation of . . . good time credits had the effect of lengthening [the] petitioner's period of incarceration' and therefore disadvantaged him." *Id.* (citation omitted).

*Smith v. Scott* is controlling here. The *Smith* court prohibited application of the 1997 change in DOC policy to the detriment of Oklahoma prisoners who had escaped while a prior version was in effect. The retroactive application of the 1997 amendment constituted an *ex post facto* violation and the same is true here.

Prison authorities apparently acknowledged the applicability of *Smith v. Scott* to Mr. Lawhead's situation, as they restored 110 credits based on the decision. *See supra* p. 6. Notwithstanding return of the 110 credits, Mr. Lawhead is also entitled to the credits that were never awarded because of the *ex post facto* violation.

The same issue arose in *Woolwine v. Ward*, Case No. CIV-02-81-L (W.D. Okla.), where the Court considered whether to award credits that an inmate would have received but for an *ex post facto* violation. There too the constitutional violation involved retroactive

application of the 1997 amendment to DOC policy. Report and Recommendation at pp. 4-5, *Woolwine v. Ward*, Case No. CIV-02-81-L (W.D. Okla. Sept. 17, 2002) (Couch, J.), *adopted*, Order at pp. 1-2 (W.D. Okla. Dec. 30, 2002) (Leonard, J.). In state proceedings, the petitioner had already obtained replacement of the credits taken away. *See id.* at pp. 4-5. But the state appellate court held that Mr. Woolwine was not entitled to the earned credits he would have received without the improper demotion. *See id.* This Court disagreed and granted habeas relief. *Id.* at p. 7. In doing so, the Court rejected the DOC's argument that the prisoner lacked a constitutional right to a particular classification level. *Id.* at pp. 5-8. Instead, the Court concluded that the petitioner had been demoted solely because of the DOC's unconstitutional application of the prison policy. *Id.* at pp. 6-7. As a result, the Court held that the petitioner was entitled to "'any earned credits that should have accumulated . . . .'" *Id.* at p. 7 (citation omitted).

Under *Smith v. Scott*, an *ex post facto* violation took place, and the resulting issue is the scope of the necessary remedy. After the escape, prison officials changed their policies and applied the amendment to Mr. Lawhead, depriving him of earned credits and the opportunity to earn credits. Under *Woolwine v. Ward*, the constitutional violation was not fully remedied by return of the credits taken away. The Petitioner is also entitled to the credits that he would have earned without retroactive application of the 1997 amendment.

The current record is incomplete, and the Court cannot accurately determine the number of credits that Mr. Lawhead would have earned in the absence of the demotion. For example, the existing record does not reflect Mr. Lawhead's status after November 2003.

*See* Consolidated Record Card at pp. 2-8.  His conduct after November 2003 could affect the number of credits to be restored.  Similarly, even for the time-period covered in the existing record, the Court cannot determine whether Mr. Lawhead would have qualified for additional credits in the absence of the *ex post facto* violation.  *See* Okla. Stat. tit. 57 § 138(D)(2) (2004 supp.).  Thus, an evidentiary hearing will be conducted to determine the number of credits that should be awarded.[11]

### Notice of the Right to Object

The parties have the right to object to the report and recommendation.  *See* 28 U.S.C. § 636(b)(1) (2000).  Any objection must filed with the Clerk of the United States District Court by May 11, 2005.  *See* W.D. Okla. LCvR 72.1(a).  Failure to file a written objection would foreclose appellate review of the suggested rulings.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

### Status of the Referral

The referral is not terminated.

Entered this 21st day of April, 2005.

_____
Robert E. Bacharach
United States Magistrate Judge

---

[11]   In a separate order, the Court is appointing counsel for Mr. Lawhead and setting a status conference.